Good morning, Your Honors. May it please the Court, I represent Ms. Rosalina Lopez, an immigrant victim of domestic violence. Therefore, I would like to reserve two minutes for rebuttal. We come before this Court today seeking remand so that Ms. Lopez can have a full and fair hearing, something that she was denied below. Due process errors plagued these proceedings. Witnesses were called who shouldn't have been. Witnesses who should have testified were prevented from doing so. And throughout the proceedings, the immigration judge made statements and findings of fact that reflect the biases that were directly condemned by this Court in the 2003 decision Hernandez v. Ashcroft. The context of these due process violations, an application for relief by an immigrant victim of domestic violence. Counsel, I want to understand the relationship between the issue of drug trafficking and domestic violence. If I understand the law correctly, if the agency properly finds that there's reason to believe that the individual is involved in drug trafficking, then that trumps that even if the person has been a victim of domestic violence, they still are inadmissible. Is that a correct understanding of the legal landscape? Yes, that's an absolutely correct understanding, Your Honor. So the whole issue here is whether the finding that there was reason to believe that Petitioner was involved in drug trafficking is valid or not. Because if it's valid, that's the end of the discussion for her, correct? That's correct. And the reason that I bring up domestic violence so early in my argument is for reasons articulated so well by the amicus briefs on file before this Court, which is that the judge displayed bias towards my client because he didn't believe her claims of domestic violence. And our position is, I'm sorry, our position is that had the judge accurately and adequately assessed the claims that she was making concerning her domestic violence victim status and adjudicated those claims based on the proper standard of evidence, that he may then have viewed the rest of the evidence properly. That's the part that I'm having difficulty dealing with. Because one can completely credit her claims and experiences of domestic violence and still say, you know what, the government has made a judgment in this statute that if the person's a drug dealer, we're not going to give the benefit to them, even though they are victims of domestic violence And that's, I guess, my issue with it. Because if that reason to believe is OK, the rest of it falls out, even if everything is true. You're absolutely right. And we are not contesting that in the least. And what we are doing is just giving a background and a context. But going to, even if you assume that his bias against my client because she was a domestic violence victim didn't exist, even if you assume that he heard all that evidence properly and that wasn't the issue before the Court, the reason to believe finding that is an issue before this Court is so infected with due process error that are beyond that, that it requires remand. And specifically, the way that the reason to believe finding came about reflects that bias. The judge behaved as a non-neutral arbiter when he insisted on calling a witness, the detective in this case, over the objections, the strong objections by both the government and Ms. Lopez. And when he did that, and he introduced and heard the testimony provided by the detective, he was relying on unreliable hearsay in order to deduce the reason to believe finding. Why did the government object to it? Because they didn't believe that this detective was credible, Your Honor, and they stated so on the record. And so importantly, what that did is it placed my client in a position where she was unable to cross-examine the only person who possessed adverse evidence against her, or adverse information against her, meaning the confidential informant. And this Court has accepted hearsay evidence. Obviously, hearsay evidence, we're not disputing the fact that hearsay cannot be submitted as evidence in removal proceedings, but we are holding the judge and the board to the rule of law that says that that hearsay must be fundamentally fair. And because, what is the strongest authority that you, what is the most similar case that you have been able to find? Well, I think the factually most analogous case for the reason to believe issue is the Rojas-Garcia case that this Court looked at a few years ago. And in that case, the Court accepted, it was very factually similar. There were two detectives that were testifying in that case about information provided to them from a confidential informant who wasn't produced in the hearing. And this Court upheld that they said that was fine. There were no evidentiary issues. Evidence wasn't compromised at all. But the reason that they said that is, there are two primary reasons that this Court relied on that evidence. First of all, the testimony provided by the detective was undisputed. And in this case, the testimony provided by Detective Bryant was very much disputed. And the second issue is that the detective in the Rojas-Garcia case had firsthand knowledge of Mr. Rojas-Garcia. He was present at his arrest. He had personally monitored video and audio tapes of the arrest. And in this case, again, Detective Bryant testified on the stand that he had never met my client. He didn't know if he could recognize her in a courtroom. He was not present at her arrest. There were no drugs ever found in her apartment. None of the 10 detectives that were assigned to the case he testified had ever monitored any of the tapes. The tapes were never presented. There's no indicia of reliability that this Court relies on to sustain hearsay evidence present in this case. The other, one of the other, I think, very critical components of this case as far as the due process issue goes is the fact that the judge stepped into the role of prosecutor. And again, we can't emphasize enough how important it is that this Court review the fact that the judge continually interrupted the direct examination of the witness. In a very similar case, I believe it was Reyes-Melendez, this Court said that it was improper for a judge to interrupt the direct, at a level of one-third of the direct testimony in that case was interrupted by the judge. In this case, if you look at the direct examination, the interruptions were over half. And he displayed bias very early on in the proceeding, which also indicated his prejudgment of my client's claim for relief. In addition, it's important for this Court to be mindful of the fact that if we can get through the reason to believe, and if we, in fact, find that the reason to believe finding was so infected by due process errors that it warrants remand, we do get to the issue of her eligibility under the Violence Against Women Act, an issue that wasn't at all addressed by the Board of Immigration. Would we ever reach that? In other words, if we found that, if your primary argument is a due process error, this was not a full and fair hearing, if we agreed with that, I'm assuming that for the sake of the question, aren't we done? We sent it back? I mean, why would we ever go beyond that? Because it's our position that the reason for the due process errors arose out of his bias towards my client. But you're absolutely right that if. Whatever, if it was because it was Tuesday or, you know, whatever, it wouldn't really ultimately matter to Warnock. Not ultimately, Your Honor, because it would be remanded, and at that point, we would hope that she would be able to present the credible evidence in support of her claim. How do you explain the money, the marked money that was in her possession? And that's the point that I wanted to mention. The my client did explain the marked money, and the government in its brief says that my client never rebutted the detective's testimony. But in fact, if you look at the record, at page 323 to 325, she makes an offer of proof through her counsel in which counsel says that the by money was found in her purse because Mr. Gomez-Mendoza owed her money, that she had sold him something. I think it was a radio. And so she was entitled to that money. There was, was there any other evidence besides this Detective Bryant that connected her with Gomez, the drug expediter? Well, she herself did because she testified that she had a relationship with him, that he was the daughter, or her daughter's boyfriend, Your Honor. But other than that, no. Were there phone calls from him to him? There were, yes. While the detective was present at the house, there were phone calls that came in from a few different sources. There was no doubt that he was a dealer. No, and we're not. There's no question about that. Yeah. I'd like to reserve the rest of my time. You have about a minute. Thank you. May it please the Court. James Grimes for Attorney General Ashcroft. Your Honors, as a matter of law, an alien cannot receive cancellation of removal for battered spouses if there is a reason to believe that she's involved in drug trafficking. That really is the heart of this case, because the evidence does show that there is a reason to believe that she's involved in drug trafficking. And I say that starting with the fact that Ms. Lopez was arrested and charged with distributing cocaine, and that charge was sworn to by an assistant district attorney in the state of Alaska, supporting probable cause. Well, it was dismissed, though, wasn't it? It was. It was dismissed. You're right, Your Honor. So what do we make of that? Well, I'm not sure what to do, exactly what to make of that, because whether or not she was convicted doesn't really matter. We don't know exactly why it was dismissed. We know that at one point Perhaps it was dismissed because her explanation was believed. Perhaps it was. I don't know. But I know at one point there was a finding of at least probable cause to charge her, and that would certainly give rise to a reason to believe that she had, in fact, been involved in distributing cocaine. But there's more than that, Your Honor. Of course, there's the testimony of Detective Bryant, which showed that she came to – Lopez came to the attention of the police when a confidential informant named Reyes said she was a drug distributor. Then we know she was in the vehicle with Gomez when the drugs were distributed on 325, and then again on 326. We know that she pulled the drugs out of her mouth, gave them to the confidential informant. We know that the buy money was found in her purse. You know that all through Detective Bryant, correct? That's right. Now, what is your response to counsel's argument that even the government objected to the presentation of Detective Bryant at the time because of concerns about his credibility or for other reasons? My response to that would be to invite the Court's attention to pages 399 and 400 of the record, where the district counsel explained that Ms. Lopez's counsel had, I guess, chastised the government for not being sensitive enough to claims of spousal abuse and suggested that the government, or at least the INS, not pursue this matter. And that was apparently one of the reasons that the district counsel didn't want to call the detective. She said in her motion to the immigration judge that she – that it appeared that Detective Bryant had misconstrued the policy of the district attorney's office about when they were going to prosecute people, whether there would be three buys or one buy. And as I believe was explained during the examination of Detective Bryant, I think at page 314, 315, there was really just a misunderstanding as to what the policy was. It wasn't – I'm not following your answer. Maybe I need to break it up into more discrete questions. Did the government object to his testimony or not? The INS did ask the judge not to call him. And the immigration judge then decided to call him. But I think – I know that goes exactly to the due process claim that – Why – what does the record say is the why? What was the basis for the objection? It was, as I was saying, at page, I think it's 399, 400, that, A, the lack of sensitivity that counsel for Ms. Lopez had said the INS was exhibiting, and then the misunderstanding as to the policy regarding the district attorney's office when they were going to prosecute someone. That strikes me as very peculiar because sensitive or not, if someone is in fact a drug dealer, the statute permits you to say, well, they may have been badly beaten, but unfortunately for them, they're also a drug dealer, so they're out of here. I guess I find it hard to follow the reason that you're giving. You're saying that is the reason, whether it's a good reason or not. Exactly, Your Honor. I don't know whether it's a good reason or not. That's the reason that the INS gave to the immigration judge. And the immigration judge, as a trier of fact, wanted to hear Ms. Witness. And I think that goes to the due process claim she's raised. The immigration judge, I think, explained at page 96 or 97 of the record that he could have issued his decision based just upon the affidavit that he had. He already had the affidavit of Detective Bryant, but he wanted to hear from the witness, and that would give Ms. Lopez an opportunity to cross-examine Detective Bryant. For all we know, Detective Bryant might have, for all the immigration judge knew, Detective Lopez's counsel might have been able to devastate him on cross-examination. And I think the typical claim we see is that the alien is saying that the declarant was not available and it wasn't fair to consider the declarant's testimony. Here, I think the claim is the declarant was too available, which I think is not a very strong claim. No doubt, if the immigration judge had just relied on the affidavit, then the claim we would hear today would be it's not fair to rely on that. Let me ask you the following question. One of the other claims, as I understand it, appears to be that because the judge improperly discounted or improperly found her incredible with regard to the domestic violence assertions, that lack of credibility about that part of her life spilled over and, therefore, that's why that kind of prejudgment is why he didn't believe her explanations about the drugs. What is your response to that? I don't think the record supports the argument that this immigration judge was biased. As I stated, there was a valid reason to call Detective Bryant. Ms. Lopez has argued that the immigration judge took over the questioning. I don't think that's true. I don't think that's what happened. If you look to the pages that she cites as having taken over the questioning, I think the first page she cites is page 127 to 133. That's a question about who her children were, whether their names, where were they born, what were their dates of birth. She has seven children, and they could be in Honduras or Texas or California or Alaska. Her next citation is to page 135 to 141 of the record. That's an objection by INS counsel and the resulting discussion about that. That's not an interruption by the immigration judge. And the rest of the questions are clarification. At 144 to 145, he clarifies why she would enter into a relationship with a man that she claimed had drugged and raped her. And so it goes. But more importantly, there was no objection to any of these, any of these alleged abusive questions. And it wasn't even raised in the recusal motion that was filed six months later. And it wasn't raised in her brief before the board. So I think I would disagree with that, with that assertion. And I believe the record strongly supports the immigration judge's conclusion that there is a reason to believe. Again, as I said, the buy money was found in her purse. There was also an indication in her purse that she lived at 1438 East 11th Street, which is important because the original confidential informant, Reyes, had said that's where she lived when he identified her as a drug dealer. They went to 1438 East 11th, the police did. They found Ms. Lopez's sister there and they found information indicating that she was, she rented a storage facility. They went to the storage facility. They found $934 in cash, three pagers, one of which was stolen, five cell phones, some identification, identification cards with Ms. Lopez's picture on it, but with a different name. They also, while they were at the house at 1438 East 11th, the phone rang a number of times. And the caller ID device on the phone indicated that one of the, four of the calls were from another drug dealer named Victor Vargas. And that's important because Detective Bryant testified that the crack that both Lopez supplied, he said this at page 277, and that Gomez supplied was very peculiar and peculiarly wrapped in a manner they'd only seen once before when Victor Vargas had sold it to him. So you have all of these connections with drug dealing and you have the indication that she distributed the drugs to the confidential informant. And in Rojas Garcia, this Court said that producing the police who monitored the confidential informant would be sufficient. Ms. Lopez, in her brief, had argued that there were no tapes, there were no, made of this transaction. In fact, at page 297 and 298 of the record, Detective Bryant explains that, in fact, there were tapes made. He just, he testified at page 298 that he just didn't have them with him when he testified at this immigration proceeding. So just as in Rojas Garcia, there was certainly sufficient evidence to find that there was a reason to believe. But even if you take away the confidential informant, we know that Detective Bryant personally identified Lopez as being in the car. And he said that at page 288 of the record, on both 325 and 326. Detective Bryant also saw the caller identification information. You throw in the fact that the buy money was found in her purse and the fact that all the things were found in the storage facility, and you have a very strong case against her. And as Your Honors pointed out, although she may be a victim of domestic violence, Congress has fashioned this law in such a way that even if that's the case, if you're a drug dealer or there's reason to believe that you're a drug dealer, you cannot obtain this form of relief. No doubt Congress has taken into account the fact that abused immigrant spouses are a vulnerable group, but they've defined the relief so that you can't get it if you're a drug dealer. And because there's reason to believe that she is a drug distributor, she's not eligible for relief, and we ask that you deny the petition. Thank you. Very briefly. Thank you. I would just like to sum up that, in fact, in this case, there is no substantial evidence that supports the reason to believe finding. The only evidence in support of that, again, is Detective Bryant's unreliable hearsay that is based solely on the presentation made to him by a confidential informant who was never produced for cross-examination. There are none of the indicia of reliability that this Court required in Rojas-Garcia. Regarding the phone calls coming into the apartment, Ms. Lopez had a relationship with both of the callers who were identified, although we have no way of knowing if those callers were calling for Ms. Lopez or if, in fact, they were those callers calling. But nevertheless, even assuming that was the case, Victor Vargas was identified by Ms. Lopez as both the father of all of her children, or five out of seven of her children, and her son. And then the drug dealer, Mr. Gomez-Mendoza, was her daughter's boyfriend. So there was a relationship there. It's not unusual that they would be calling the house. In addition, the government argued the tapes were not produced, but they were the we said they didn't exist, but in fact, we allege that they were just never produced for the hearing. Thank you. Are there any further questions? Thank you. Thank you. The case just argued is submitted for decision. Before hearing the next case, the Court will take a very brief recess. All rise. This Court can recess. Thank you.
judges: Schroeder, Goodwin, Graber